**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JULIE TORRES, | 3:07-CV-538-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| THE COUNTY OF LYON and; DOES 1 - 10, inclusive; ABC CORPORATIONS 1 - 20, inclusive; and BLACK & WHITE ENTITIES, 1 - 20, inclusive, | |
| Defendants. | |

Before the court is Defendant Lyon County's Motion for Summary Judgment (Doc. #20.[1]) Plaintiff has opposed (Doc. #26) and Defendants have replied (Doc. #31). Having read the papers, and carefully considered the arguments and the relevant legal authority, and with good cause appearing, the court grants the motion.

## I. BACKGROUND

This is an action for employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*. Plaintiff Julie Torres ("Torres") began working for Lyon County, Nevada ("Defendant") as a part-time clerk in the juvenile master court in July 1999. In one incident, she alleges that Judge Robert Bennett suggestively touched her arm. Her supervisors addressed this issue and granted Plaintiff administrative leave. She also alleges that Judge Stephen Grund regularly subjected her to sexual discrimination and retaliation. (Doc. #26 at 2.) Judge Grund stared at her breasts and made sexually inappropriate comments to her. (*Id.* at 2-3.) She complained about this conduct to her supervisors,

---
[1] Refers to the court's docket number.

Debra Depaoli and Judge Wayne Pederson, to no avail. (*Id.* at 3.) Torres also alleges four retaliatory actions against her as a result of her prior complaints: 1) for the past three years, she was denied a reclassification in her position that would result in a pay increase; 2) she was denied a promotion to a Juvenile Probation Officer; 3) she was denied a promotion to Court Services Officer position; and 4) she was written up by Depaoli for trivial reasons. (*Id.* at 3-6.) The last act of discriminatory conduct occurred more than 180 days but less than 300 days before she filed her complaint with the Equal Employment Opportunity Commission (EEOC). (Doc. #26 at 3.)

Torres alleges that she filed a formal complaint to Judge Pederson in July 2006, but no appropriate action was taken. (*Id.* at 5.) Judge Grund later confronted her after learning that the complaint had been filed. Torres filed another formal complaint in September 2006 to the Lyon County Human Resources Administrator, who also failed to take further action. (*Id.* at 6.) Torres then filed a complaint with the Nevada Commission on Judicial Discipline against Judge Grund on October 25th, 2006, and that investigation is currently pending. (*Id.* at 7.) Torres resigned from her position on the same date and filed a charge of discrimination with the EEOC on July 18th, 2007.

Torres's complaint contains the following four causes of action: 1) that she was subjected to a hostile work environment in violation of Title VII from the behavior by Judges Grund and Bennett; 2) that she was subjected to retaliatory conduct in violation of Title VII; 3) that she was constructively discharged from her employment as a result of the Title VII violations; and 4) that Lyon County was negligent with respect to its retention and supervision of Judge Grund. Defendant moves for summary judgment on Plaintiff's Title VII claims based on the applicable statute of limitations. With respect to the last claim, Defendant also argues that the court should decline to exercise its supplemental jurisdiction and that it had no duties with respect to hiring or supervising Judge Grund. Torres argues that a longer statute of limitations applies so that her action is not time-barred.

/ / /

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

"A plaintiff alleging employment discrimination 'need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Davis v. Team Electric Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)). An employee's right to a full trial should be zealously guarded in light of the difficulty in proving an employment discrimination claim. *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004)).

### III. DISCUSSION

I.   STATUTE OF LIMITATIONS

Defendants argue that this action should be dismissed due to the statute of limitations. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions and privileges of employment because of such individual's race, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993) (citing 42 U.S.C. § 2000e-2(a)(1)). According to § 706(e) of the Act, a plaintiff must first file an administrative charge with the Equal Employment (EEOC) within 180 days of the last act of discrimination.[2]

---

[2] Section 706(e) provides: "(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the

4

*MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081-82 (citing 42 U.S.C. § 2000e-5(e)(1)). "[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 2166-67 (2007) (citing 42 U.S.C. § 2000e-5(e)(1); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). However, there is an exception to this rule in so-called deferral states – states where there is an antidiscrimination law and an agency tasked with enforcement responsibilities. 42 U.S.C. § 2000e-5(e)(1). In deferral states, when the plaintiff institutes proceedings with a "State or local agency with authority to grant or seek relief from [the alleged unlawful employment] practice", the limitations period is extended to 300 days. *Id.* Nevada is a deferral state by virtue of the Nevada Equal Rights Commission (NERC). *Roberts v. Nevada ex rel. Dept. of Conservation and Natural Resources, Div. of State Parks*, 2008 WL 3925084, at *4 (D.Nev. August 28, 2008).

Because Plaintiff filed her complaint with the EEOC on July 18th, 2007, the critical dates for the 180-day and 300-day statutes of limitations are January 19, 2007, and September 21, 2006. Torres claims that the last discriminatory act occurred on October 25th, 2006, when Plaintiff was constructively discharged from her position. (Doc. #26 at 11.) This occurs in the interim between the two limitations periods, so it is necessary to determine which one applies. Torres argues that the 300-day period should apply because she filed a complaint against Judge Grund with the Nevada Commission on Judicial Discipline ("the Commission") on October 25th, 2006. (Doc. #26, Ex. D.) That complaint alleged *inter alia* that the judge had made sexually inappropriate comments toward her.[3] Therefore, the applicability of the statute of

---

State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 42 U.S.C. § 2000e-2(a)(1).

[3] The complaint indicates that Judge Grund "made sexually explicit comments to deputy court clerk, juvenile defendants, and their parents." It goes on to list three such comments: where he asked the clerk whether she "wanted her own judge","I'd like to see what your husband eats for lunch", and a comment remarking that the recipient was not wearing pantyhose that day. (Doc. #22, Ex. D, at 3.) The complaint makes no other references to employment discrimination or sexual harassment.

5

limitations turns on whether the Commission is an "agency with authority to grant or seek relief from [an unlawful employment] practice or to institute criminal proceedings with respect thereto upon receiving notice thereof."[4]  42 U.S.C. § 2000e-5(e)(1).  The parties cite to no authority, and the court is unable to locate any, that directly addresses this question.

Courts may consider enabling legislation that establishes state or local agencies to determine whether an agency has the "authority to grant or seek relief." *MacDonald*, 457 F.3d at 1084-85 (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123, 108 S.Ct. 1666 (1988)).  Under Nevada law, the Commission has exclusive jurisdiction over the "censure, removal, involuntary retirement and other discipline of judges."  Nev. Rev. St. § 1.440.  The Commission originated from a 1976 amendment to the Nevada Constitution providing that "[a judge] may, in addition to the provision of Article 7 for impeachment, be censured, retired, removed or otherwise disciplined by the Commission on Judicial Discipline."  Nev. Const. Art. VI, § 21.  The Commission has the power to impose various forms of discipline for judicial misconduct, including censure, removal, fines, suspension, and counseling.  *Id.* at § 1.4677.  "Any person may bring to the attention of the commission any matter relating to the fitness of a justice or judge."  Nev. Const. Art. VI § 21.7.

Based on the applicable the state law, the Commission is not an agency with subject matter jurisdiction over unlawful employment practices within the meaning of § 706(e) of the Act.[5]  It lacks the ability to "institute criminal proceedings" based on state or federal antidiscrimination laws.  Neither can it "seek" relief with respect to discriminatory practices, such as by representing Torres in court, cooperating with enforcement authorities within the

---

[4] Because the powers to "grant" relief, "seek" relief, and "institute criminal proceedings" are disjunctively stated in the statutory language, the Commission need only possess one of these powers to satisfy the requirements for the 300-day rule.  *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 440 (4th Cir. 1998), *abrogated on other grounds by Edelman v. Lynchburg College*, 228 F.3d 503 (4th Cir. 2000).

[5] The enabling legislation for NERC, however, indicates that its subject matter jurisdiction includes claims based on employment discrimination matters.  *See* Nev. Rev. St. § 613.405.  Defendants seem to assume that the jurisdiction of the Commission and NERC must be mutually exclusive, but this is not clear from the statutory language.  It is therefore necessary to consider the jurisdiction of the Commission itself.

state, or mediating a settlement between the parties. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 440 (4th Cir. 1998), *abrogated on other grounds by Edelman v. Lynchburg College*, 228 F.3d 503 (4th Cir. 2000). In some sense, the Commission can "grant" relief by disciplining or removing a judge responsible for discriminatory conduct, thereby bringing some measure of "relief" to a victim. But unlike the Nevada Equal Rights Commission (NERC), which is considered a fair employment practices agency by the EEOC[6], the Judicial Commission cannot order the restoration of employment, back pay, annual leave time, sick time, or sick pay to an aggrieved employee. *See* Nev. Rev. St. § 233.170. Other local agencies qualifying for the 300-day statute of limitations have far greater powers to directly resolve employment discrimination. *See Tinsley*, 155 F.3d at 440 (deferral agency had powers to investigate complaints alleging discriminatory practices, hold hearings, make findings and recommendations, attempt mediation, and cooperate with enforcement authorities on prevention or relief); *Crosslin v. Mountain States Telephone and Telegraph Co.*, 422 F.2d 1028 (1970) (deferral agency had power to issue cease and desist orders); *Hadfield v. Mitre Corp.*, 562 F.2d 84 (1st Cir. 1977) (deferral agency had mediation powers). While judicial discipline imposed by the Commission may end discriminatory conduct, this is not the sort of "relief" that extends the statute of limitations for filing an employment discrimination complaint.

Congress's purpose in adopting Title VII was to eliminate discriminatory employment practices. This basic policy informs the construction of this remedial legislation. *Mohasco Corp. v. Silver*, 447 U.S. 807, 818, 100 S.Ct. 2486, 2493 (1980). In a thorough analysis of the legislative history, the Supreme Court noted that the purpose of the longer limitations period was "to give state agencies an opportunity to redress the evil at which the federal legislation was

---

[6] The EEOC has a designated list of fair employment practice (FEP) agencies with which it cooperates when processing discrimination charges. These agencies have coextensive jurisdiction with the EEOC to enforce state and local civil rights laws, and often work- and notice-sharing agreements as well. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 410 n. 15 (4th Cir.2005) (internal citations omitted). The standard for being designated an FEP agency is virtually identical to that for being a local antidiscrimination agency that triggers the 300-day limitations period. *Compare* 29 C.F.R. § 1601.70(a) *with* 42 U.S.C. § 2000e-5(e)(1). The NERC is listed as an FEP agency; the Commission is not. *See* 29 CFR § 1601.74(a) (listing Nevada Commission on Equal Rights of Citizens as an FEP agency (now known as NERC)).

aimed, and to avoid federal intervention unless its need was demonstrated." 447 U.S. at 821, 100 S.Ct. at 2494. Similarly, the Ninth Circuit has held that Congress intended to give each state which establishes the proper administrative machinery a reasonable opportunity to deal with alleged employment discrimination problems arising in that state before the EEOC intervenes. *E.E.O.C. v. Union Bank*, 408 F.2d 867 (9th Cir. 1969) (citing 110 Cong. Rec. 13087).

The Commission lacks the administrative capacity to remedy employment discrimination, as evidenced by its enabling legislation and limited remedial powers. Indeed, by her own admission, Torres was not seeking protection of the federal or state civil rights laws, which she erroneously believed were inapplicable to her grievances. Rather, she lodged her complaint with the Commission for a different recourse – the sanctioning of Judge Grund under the Code of Judicial Conduct. (Doc. #26 at 28.) The Commission's limited purpose was apparent to Torres herself from the preprinted language of the complaint form, which makes no mention of employment discrimination, civil rights laws, or employment-related remedies.[7] (Doc. #26, Ex. D.) Moreover, Torres evinced an awareness of the disciplinary function of the Commission by complaining about conduct bearing no relationship to employment discrimination, and because she did not deem it necessary to identify herself as the target of the harassment in the complaint.[8]

It would therefore distort Congressional intent to find that the Commission was a local antidiscrimination agency to which the extended limitations period is applicable. Had Congress intended to allow a complainant a period of time to pursue *any* administrative remedy to cure the effects of discrimination, it could have simply said so rather than limiting

---

[7] The form also contains a warning that "filing of a complaint does not stay or stop any time I am provided to appeal a decision I disagree with or any decision that adversely affects me." (Doc. #26, Ex. D, at 1.)

[8] For example, the complaint mentions the overuse of prescription medications while on the bench; allowing other court employees to falsely claim reimbursements and pay; convincing defendants to plead guilty; screaming at probation officers; and making inappropriate comments toward juvenile defendants. (Doc. #26, Ex. D, at 3.) Moreover, the portion of the complaint where Torres complains of "sexually explicit comments" mentions not only behavior exclusively directed toward her, but also comments directed to juvenile defendants and their defendants. *Id*. Besides identifying three sexual-based comments, Torres identifies none of the other forms of discrimination identified in her complaint, such as the retaliatory conduct and constructive discharge.

the agencies triggering the 300-day limitations period to those targeting discriminatory employment practices. Allowing Torres to bring her claim would render this provision a nullity and overrule the legislative judgment that "most genuine claims of discrimination would be promptly asserted and that the costs associated with processing and defending stale or dormant claims outweigh the interest in guaranteeing a remedy to every victim of discrimination." 447 U.S. at 820; 100 S.Ct. at 2494. Therefore, the 180-day statute of limitations bars Torres's claim.

To overcome the statute of limitations, Torres argues that her claim should be subject to equitable tolling. The doctrine of equitable tolling applies when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Id*. "Equitable tolling is unavailable in most cases" because of the "high hurdle" to its application. *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir.2002) (internal quotation marks and citation omitted). The Ninth Circuit recognizes equitable tolling in two instances: (1) when the defendant's wrongful conduct or (2) extraordinary circumstances make it impossible for the plaintiff to timely assert a claim. *Forti v. Suares-Mason*, 672 F.Supp. 1531, 1549 (N.D.Cal.1987). "Wrongful conduct" consists of a defendant's fraudulent concealment of relevant facts without any fault or lack of due diligence by the plaintiff. *Holmberg*, 327 U.S. at 396-97, 66 S.Ct. 582. "Extraordinary circumstances" are those in which external forces beyond a plaintiff's control prevent a plaintiff from bringing his claim. *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947). A Title VII plaintiff has the burden of demonstrating entitlement to equitable tolling. *Scholar v. Pacific Bell*, 963 F.2d 264, 266 (9th Cir.1992).

Torres argues that equitable tolling should apply because (1) Judge Pederson informed her that judges were not covered under the anti-discrimination policy; (2) she reasonably believed that the Commission had exclusive jurisdiction over her allegations; and (3) she was

9

unable to secure counsel until she had the sufficient funds. Taking the evidence offered in a light most favorable to Torres, the court finds that she has failed to create a "genuine issue of material fact" of extraordinary circumstances or wrongful conduct that made it "impossible" for her to file within the statutory period. Plaintiff's reliance on the alleged misstatement concerning the antidiscrimination policy does not rise to the level of "wrongful conduct" sufficient to invoke equitable tolling. As a threshold matter, this statement did not conceal the facts underlying Plaintiff's claim. Moreover, Torres does not claim that this was "wrongful" in the sense that the speaker was deliberately attempting to mislead Plaintiff. Finally, Plaintiff was still obligated to exercise due diligence with respect to preserving her legal rights. She had notice of the filing requirements through informational posters in her workplace, contact information for an Equal Employment officer assigned to her workplace, and underwent training regarding the antidiscrimination policy. Plaintiff was also advised by an attorney to secure counsel regarding her complaints as early as 2005. (Doc. #26, Ex. O at 178, 180.) In fact, Plaintiff represented that she had retained an attorney when making a written complaint to the office in September 2006. (*Id.* at Ex. P.)

Similarly, Plaintiff's erroneous belief in the exclusive jurisdiction of the Commission – a mistake of law – is not a sufficient basis for equitable tolling. *See Mahar v. City of Portland*, 2005 WL 465428, at *11 (D.Or. February 28, 2005) ("Ignorance of the law, as opposed to ignorance of the facts which form the basis of the claim, is simply not a basis to apply the doctrine of equitable tolling.") (citing *Wisley v. Martinez*, 1995 WL 463670, at *2 (N.D.Cal. July 17, 1995)). Neither does the mere fact that Torres was unable to hire an attorney sooner, as a financial constraint does not rise to the level of an "extraordinary" obstacle beyond her control that made it "impossible" to file a charge with the EEOC. Accordingly, Plaintiff has not proven that she is entitled to equitable tolling. Because the court determines that Plaintiff did not timely file her complaint with the EEOC before the expiration of the 180-day statute of limitations, it grants Defendants' motion for summary judgment dismissing Counts 1, 2, and 3 of her complaint.

/ / /

II.   PLAINTIFF'S REMAINING CLAIM

In her fourth and final claim, Torres pleads a state law tort theory of negligence against Defendant. "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United States of America v. Gibbs*, 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(a). Because no federal claims remain in this action, the remaining state law claim should be dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #20) is **GRANTED**.

**LET JUDGMENT ENTER ACCORDINGLY.**

DATED: March 31, 2009.

_____
UNITED STATES MAGISTRATE JUDGE